2002 ME 24

**Jerry D. MURPHY et al.**

v.

**Alan D. MADDAUS et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 2, 2001.
Decided: Feb. 13, 2002.

S. James Levis Jr., Levis & Hull, P.A., Biddeford, for plaintiffs.

Anne M. Carney, Norman, Hanson & DeTroy, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Alan and Barbara Maddaus appeal from the judgment of the Superior Court (York County, *Delahanty, J.*), that a prior order was a final judgment. We affirm the judgment.

## I. BACKGROUND

[¶ 2] This case concerns a five year property dispute between neighbors. The Murphys are seasonal residents of York, Maine. Beside their land is an unimproved lot, a corner of which they used as a driveway. The Maddauses purchased the unimproved lot in 1995 and built a fence on the property line blocking the Murphys' driveway. Litigation ensued and during the second day of trial, both parties told the court they had reached a settlement. The court asked counsel to "put the agreement on the record so that it is memorialized ...." The pertinent recitations are as follows.

[¶ 3] The first provision stated, "the parties will enter into a formal written settlement agreement." The Murphys "agree to dismiss all claims with prejudice." Counsel for the Maddauses then recited,

this is where my notes get a little tricky ... [t]he license granted by the Maddauses will expire at the earlier of these events: The Murphys' transfer of any interest in their property ... the date of death of the last of Mr. or Mrs. Murphy to die; the rental of the home or the property. Additionally ... if ... the Murphys agree they will not contest a request for a waiver or variance if the license to use that triangle of the property interferes with the granting of a permit by the town or other authority based upon setback or shoreland requirements; if the existence of the license to use that triangle alone is the factor that defeats ... if it was a matter which was appealable through the administrative process of the Maddauses ability to construct a residence on the lot, then the license will expire....

The judge signed an order stating, "[c]ounsel have represented that this case is settled. It is Ordered that unless docket entries or other documents showing final disposition are filed within (30 days) this case is dismissed with prejudice."

[¶ 4] Following months of disagreement over the form of the "formal written settlement agreement," the Murphys filed a motion for compliance with the settlement agreement. The principal sticking point was whether the "license" granted to the Murphys was binding on the Maddauses' successors-in-interest. The Superior Court held a hearing and issued an order on the motion to enforce settlement on May 16, 2000.

[¶ 5] Specifically, the court stated, "[o]n review the court finds that all parties agreed to the terms stated on the record in court. Except for memorializing the terms in writing, the points of contention were settled and resolved." The court recognized that while a license is a "revocable personal privilege" and does not confer an interest in land,

> [t]he terms [of the settlement recited in court] clearly contemplate the continuance of the license until one of the four conditions ... occur. All conditions relative to termination relate to conduct or events by the plaintiffs, actions controlled by their conduct (except death). It is inconceivable that the plaintiffs would agree to the settlement terms if the license could be defeated by a simple transfer of defendants' interest, even in a transaction specifically designed to defeat this license. Defendants' successors-in-interest are bound by the agreement.

[¶ 6] On June 16, 2000, the Maddauses filed a notice of appeal to this Court under the "death knell" exception to the final judgment rule, and a motion for relief from the order pursuant to M.R. Civ. P. 60(b)(6), contending that the agreement as reflected in the transcript did not bind their successors-in-interest. A settlement conference was held on September 1, 2000; the case remained unresolved. The parties asked us to stay the pending appeal until the Superior Court ruled on the 60(b)(6) motion. On September 15, the Superior Court denied the Maddauses' Rule 60(b)(6) motion, reasserting its conclusion that the settlement was binding on the Maddauses successors. On September 20, we dismissed the appeal as untimely.[1] On October 3, the Maddauses filed a motion in the Superior Court for entry of a judgment pursuant to M.R. Civ. P. 58 accompanied by a proposed judgment. In a March 13, 2001, order the court denied the Maddauses' motion, confirming that its May 16, 2000, order was a final judgment and "[a]ction by the court to decide the Rule 60(b) motion or for the court to arrange a settlement conference do not change this from a final judgment to an interlocutory order of some kind." The Maddauses filed a second notice of appeal to this Court on March 23, 2001.

## II. DISCUSSION

[¶ 7] The Maddauses contend the May 16, 2000, order was not properly entered pursuant to M.R. Civ. P. 58, did not conclusively dispose of the pending issues and therefore was not a final judgment. The Murphys contend the May 16 order determined all substantive issues and the dismissal of the first untimely appeal to this Court ended the case.

[¶ 8] The standard of review in the present appeal is *de novo*. The March 13, 2001, order expressed a legal conclusion that the May 16, 2000, order was a final judgment. Questions of law, or legal conclusions, are subject to *de novo* review. *Bissias v. Koulovatos*, 2000 ME 189, ¶ 6, 761 A.2d 47, 49.[2]

[¶ 9] There are two steps in analyzing whether the May 16 order is a final judgment. First, an order as entered on the

---

1. The order appealed from was docketed May 16 and the Maddauses filed the notice of appeal on June 16, one day late.

2. The Superior Court did not *construe* its May 16 order via the March 13, 2001, order; we clearly recognize a court's authority to clarify what it meant by an earlier judgment. *Town of Freeport v. Ocean Farms of Maine*, 633 A.2d 396, 398 (Me.1993). This is not a case where the court certified a claim as final to expedite appellate review; such court action is reviewed for an abuse of discretion. *Dexter v. Town of Norway*, 1998 ME 195, ¶ 6, 715 A.2d 169, 171.

docket must comply with M.R. Civ. P. 58. Rule 58 works in tandem with Rule 79(a) and directs, "[t]he notation of a judgment in the civil docket in accordance with Rule 79(a) constitutes the entry of judgment; and the judgment is not effective before such entry." M.R. Civ. P. 58 (2000). Rule 79(a), in pertinent part, requires, "[a]ll papers filed with the clerk, all appearances, orders, verdicts and judgments shall be noted chronologically upon the docket .... These notations shall briefly show the nature of each paper filed ... and the substance of each order or judgment of the court ...." M.R. Civ. P. 79(a) (2000).[3]

[¶ 10] Alternatively, Rule 79(a) provides that, "the notation of an order or judgment may consist of an incorporation by reference to a designated order, judgment or opinion ... provided that the notation shows that it is made at the specific direction of the court." M.R. Civ. P. 79(a). *See, e.g., Murphy v. City of Bangor,* 422 A.2d 1013, 1014 n. 1 (Me.1980) (such *pro forma* decree specifically prohibited by statute so that Worker's Compensation Commission could not "incorporate by reference" its decisions, distinguishing the statutory requirement from Rule 79(a)).

[¶ 11] In this case the Superior Court's May 16 order concluded by stating, "[t]he clerk shall incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a)." The docket entry recites this direction, is prefaced by an instructive, "ORDERED," and ends with the judge's name. Therefore, the Maddauses' first contention that the order of May 16 was not properly entered pursuant to Rule 58 (with the internal requirement that the entry comply with Rule 79(a)) is without merit.

[¶ 12] The second step in the analysis of any final judgment is to look beyond the notation on the docket to the actual decree from the court. Complying with Rule 58 is not a matter of particular formality; we examine whether an order to enter judgment "reflects an adjudication of the dispute before the court." *York Mut. Ins. Co. of Maine v. Mooers,* 415 A.2d 564, 566 (Me.1980). Examining a pronouncement from a court can reveal if it is a judgment versus an "opinion ... or a statement of the court's findings of fact and conclusions of law." *Id.* (citing *Burt Co. v. Burrowes Corp.,* 158 Me. 237, 182 A.2d 481, 483 (1962)). A "judgment" as used in the rules of civil procedure "includes a decree and any order from which an appeal lies." M.R. Civ. P. 54(a) (2000).

[¶ 12] For an order to be a final judgment, the order must adjudicate "the

---

**3.** Without indication of the substance of a judgment, there is no proper entry of judgment to form a basis for appeal. *3 W Partners v. Bridges,* 651 A.2d 387, 389 (Me.1994), *Town of Freeport v. Ocean Farms of Maine, Inc.,* 600 A.2d 402, 403 (Me.1991), and *Bramson v. Richardson,* 412 A.2d 381, 382 (Me.1980). The bare entry of an order granting a motion for summary judgment but lacking a description of relief, "either for a sum of money or for possession or for anything else," does not indicate the substance of the court's judgment required by Rule 79(a) and thus is not an effective entry of judgment pursuant to Rule 58. *Bramson,* 412 A.2d at 383. A court must describe "with particularity the land and buildings to which the lien attaches," to be sure judgment is properly entered in accordance with Rule 58. *Dufour v. Silsby,* 405 A.2d 737, 739 (Me.1979). When a court amends a previous judgment and the docket merely reads, "[a]mended Divorce Judgment signed by J.L. Batherson, Judge on 5–31–79," the failure to indicate the substance of the order meant the entry was ineffective and not appealable until properly entered. *Breau v. Breau,* 418 A.2d 193, 195 (Me.1980). A docket entry that declared a default judgment, dismissed a counterclaim, and awarded one party attorney fees, without specifying the form of affirmative relief for the prevailing party, did not constitute an effective entry of judgment. *Rossignol v. Raynes,* 650 A.2d 935, 936 (Me.1994).

respective rights, duties, and liabilities of the various parties." *York Mut. Ins. Co. of Maine*, 415 A.2d at 566 (when an order issuing a declaratory judgment did not so indicate, we concluded the court did not comply with Rule 58 and that judgment had not been entered.) A fundamental criterion to discern "interlocutoriness" from "finality" is whether the court action "fully decides and disposes of the whole cause leaving no further questions for future consideration and judgment by the Court." *Allen v. Cole Realty, Inc.*, 325 A.2d 19, 21 (Me.1974) (quoting *Gilpatrick v. Glidden*, 82 Me. 201, 19 A. 166 (1889)) (holding an order restoring a previously dismissed case to the docket to await trial is interlocutory); *see also Musson v. Godley*, 1999 ME 193, ¶ 4, 742 A.2d 479, 480 (holding an order stating, "the court has left the door open for the parties to return to court upon the issues of partition and money due ..." was not an appealable final judgment); *Battryn v. Indian Oil Co.*, 472 A.2d 937, 938 n. 1 (Me.1984) (holding finality was achieved when all other claims, except an outstanding unqualified order against attorney to pay sanction, were disposed of by the court).

■ [¶ 13] A final judgment "lies not in the nature of the ruling, but in its effect in concluding the rights of the party appealing; if his rights are concluded so that further proceedings after the ruling cannot affect them, there is a final judgment." *Hazzard v. Westview Golf Club, Inc.*, 217 A.2d 217, 223 (Me.1966); *Paradis Co. v. Maxim Co.*, 148 Me. 43, 87 A.2d 666, 667 (1952) (when findings of fact and rulings of law lack a decree—a statement that tells "[w]ho does what to carry out its terms[,]"

an appeal is premature due to lack of finality). Thus, the consummating effect of an order, rather than whether it is nominally called a "judgment" identifies an appealable final judgment.

[¶ 14] The Maddauses contend that if the May 16 order had in fact resolved the case, then there would have been no need for the court to order the parties to "execute all appropriate documents necessary to effect a final agreement." The command was ministerial; it did not imply the court had not resolved the case with the order. The Maddauses contend because a status and settlement conference occurred that further consideration of the matter by the court was needed. However, these actions by the court were likely attempts to compel compliance with the order (instead of civil contempt proceedings), rather than *ad hoc* evidence that the court did not render a final judgment.

[¶ 15] The Maddauses rely on a case that involves a court order requiring a divorcing couple to maintain joint tenancy of property while the parties attempt to agree on a disposition; if the parties did not resolve their dispute, they could petition the court to divide the property. *Bowley v. Bowley*, 440 A.2d 332, 333 (Me. 1982). We held the order[4] was interlocutory and not ripe for an appeal. *Id.* at 333. In this case, however, the May 16 order did not leave it up to the parties to determine the details; the court laid out the agreed terms of settlement: "[T]he court finds that all parties agreed to the terms stated on the record in court. Except for memorializing the terms in writing, the points of contention were settled and resolved." The intent of the May 16 order

---

4. There was a second order in 1981 maintaining the status quo from the first order in 1976. The husband appealed from the 1981 order to the Superior Court, which held the 1976 order must be read to have awarded property in equal shares to the spouses. The

wife appealed from this Superior Court ruling to the Law Court, which subsequently vacated the Superior Court's judgment because both orders had been interlocutory and not ripe for appeal. *Bowley*, 440 A.2d at 334.

was to completely resolve the dispute between the parties, evidenced by the court's deliberate finding of what the parties had agreed to on July 21, 1998. The Superior Court's determination in the March 13, 2001, order that the May 16, 2000, order was a final judgment is correct. If the May 16 order contained reviewable errors, a substantive challenge should have occurred. Appellate review is foreclosed because our jurisdiction was not properly invoked to examine the contents of the May 16 order.

The entry is:

Judgment affirmed.